1  Charles C. Weller (SBN: 207034)
2  legal@cweller.com
   CHARLES C. WELLER, APC
3  11412 Corley Court
   San Diego, California 92126
4  Tel: 858.414.7465
   Fax: 858.300.5137
5
6  Attorney for Plaintiffs Brandon Faye and Deana Lozano

7
8  **IN THE UNITED STATES DISTRICT COURT**
   **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| BRANDON FAYE, *individually and on behalf of all those similarly situated*; and DEANA LOZANO, *individually and on behalf of all those similarly situated*, | ) ) ) ) ) ) No. _____ |
| *Plaintiffs*, | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) JURY TRIAL DEMANDED |
| REAL KETONES, LLC, *a Utah limited liability company*, | ) ) ) ) |
| *Defendant*. | ) |

Brandon Faye and Deana Lozano ("Plaintiffs"), individually and on behalf of a Class of nationwide consumers similarly situated and a Subclass of California consumers similarly situated, by and through undersigned counsel, hereby bring this action against Real Ketones, LLC ("Real Ketones"), alleging that its SHIFT dietary supplements (watermelon, black cherry, and raspberry lemonade flavors) (collectively, "the Product(s)"), which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised, and upon information and belief and investigation of counsel alleges as follows:

-1-
CLASS ACTION COMPLAINT

## PARTIES

1. Plaintiff Brandon Faye is and at all times relevant was a citizen of the state of Florida, domiciled in Palm Bay, Florida.

2. Deana Lozano is and at all times relevant was a citizen of the state of California, domiciled in Los Angeles, California.

3. Defendant Real Ketones, LLC is a Utah limited liability company with its principal place of business and headquarters in St. Petersburg, Florida. On information and belief, decisions regarding the formulation and labelling of the Products are made at this Florida location.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

5. Plaintiff seeks to represent Class members who are citizens of states or countries different from the Defendant.

6. The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

7. In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

8. This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9. Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including to one or more Plaintiff; shipping the Products to commercial and individual consumers in this district, including one or more Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to one or more Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. One or more Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to one or more Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**A.     Consumers Pay A Premium for "Clean Labels."**

15. Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

16. For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey. Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

17. This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

18. On or about May 17, 2023, Lozano purchased the Products (watermelon, black cherry, and raspberry lemonade flavors) from Amazon.com.

19. Ms. Lozano is a health care administrator who eats with intentionality and for health. She carefully reviews labels, including the Products' labels, because she prefers to consume only natural ingredients and avoid artificial flavors and ingredients.

20. On or about July 29, 2023, Faye purchased the Products (watermelon, black cherry, and raspberry lemonade flavors) from Amazon.com.

21. Like Lozano, Mr. Faye carefully reviews labels, including the Products' labels, because he prefers to consume only natural ingredients and avoid artificial flavors and ingredients.

### B. Defendant's Use of Synthetic Flavorings and Deceptive Labels.

22. Defendant Real Ketones formulates, manufactures, and sells the Products.

23. The front label (or "principal display panel") of the Products, their back label, and the front of the individual units within the larger package all prominently state they are "Naturally Flavored":




<a>
</a>



24. These natural flavoring claims are false. The Products are flavored using an artificial flavoring, DL malic acid, that is derived from petrochemicals.

25. While there is a naturally occurring form of malic acid, it is extremely expensive to formulate in large quantities and is almost never used in mass-produced food products.

26. Undersigned counsel sent the Products to be tested by an independent third-party laboratory. That testing detected the presence of the "D" isomer in the malic aid Defendant uses in these Products. The presence of the D isomer means that the ingredient used in the Products is DL malic acid, a synthetic substance derived from petrochemicals.[1] This is the industry-standard method of determining whether the malic acid used in a food product is artificially

---

[1] DL malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

derived or naturally occurring. DL malic acid was detected in the Products at levels that strongly indicate that the purpose of the DL malic acid is for flavoring and not for any other purpose.

27. DL malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

28. Federal regulations note explicitly that "DL-malic acid does not occur naturally." 21 C.F.R. § 184.1069(a).

29. Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The sweetness or tartness of a fruit flavor is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as malic acid.

30. The quality and consumer acceptability of fruit flavors is based on their perceived sweetness and tartness, which in turn is driven by the ratio between sugars and acids. Fruits such as watermelons, cherries, and raspberries have their own natural ratio of sugars and acids.

31. The DL malic acid used in the Products is used to create, simulate, and/or reinforce the sweet and tart taste that consumers associate with the fruit flavors stated on the labels.

32. Defendant uses the petrochemical-derived DL malic acid in its Products to create a sweet and tart flavor but pretends that it uses only natural flavorings, misbranding the Products and deceiving consumers.

**C.    Requirements for Labelling**

33. Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

34. Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible

-7-
CLASS ACTION COMPLAINT

yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

35. Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

36. Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22. Here, the Products' labels state the characterizing flavors.

37. If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

38. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

39. Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

40. California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875, *et seq.*, enacts as substantive requirements of state law all food flavoring and additive regulations of the FDCA.

41. By changing the ratio between sugars and acids that is naturally found in fruits, the DL malic acid used in the Products reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included.

42. DL malic acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source.

43. The Products therefore contain artificial flavorings.

44. Because the Products contain artificial flavoring, California law (incorporating federal regulations) requires the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

45. The Products have none of the required disclosures regarding the use of artificial flavors.

46. Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

49. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

50. Plaintiffs reviewed the labels on the Products prior to their purchases, and reviewed the natural flavoring claims being made on those labels. Consumers such as Plaintiffs

who viewed the Products' labels reasonably understood Defendant's "Naturally Flavored" statement, as well as its failure to disclose the use of artificially derived malic acid, to mean that the Products contain only natural flavorings. These representations and material omissions were both false and deceptive.

51. Consumers including Plaintiffs reasonably relied on Defendant's statements such that they would not have purchased the Product from Defendant if the truth about the Product was known, or would have only been willing to pay a substantially reduced price had they known that Defendant's representations were false and misleading.

52. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

53. Consumers including Plaintiffs especially rely on label claims made by food product manufacturers such as Real Ketones, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

54. Plaintiffs suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

**CLASS ACTION ALLEGATIONS**

55. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action individually and as representative of a Class of all consumers similarly situated nationwide who purchased the Products within four years prior to the filing of this Complaint, as well as a Subclass of all consumers similarly situated in the state of California who purchased the Products within four years prior to the filing of this Complaint.

56. Excluded from the Class and Subclass are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

57. Plaintiffs reserve the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

58. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

59. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the nation.

60. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

    a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

    b. Whether a reasonable consumer would understand Defendant's natural flavorings claims to indicate that the Products contained only natural flavorings, and reasonably relied upon those representations;

    c. Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

   d. the proper amount of damages and disgorgement or restitution;

   e. the proper scope of injunctive relief; and

   f. the proper amount of attorneys' fees.

61. Defendant engaged in a common course of conduct in contravention of the laws Plaintiffs seek to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

62. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

63. **Typicality – Rule 23(a)(3)**: Plaintiffs' claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

64. Specifically, all Class members, including Plaintiffs, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiffs seek the same relief as the Class members.

65. There are no defenses available to Defendant that are unique to the named Plaintiffs.

66. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiffs are fair and adequate representatives of the Class because Plaintiffs' interests do not conflict with the Class members' interests. Plaintiffs will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

67. Furthermore, Plaintiffs have selected competent counsel who are experienced in class action and other complex litigation. Plaintiffs and Plaintiffs' counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

68. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

   b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

   c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

   d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

69. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

70. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiffs are unable to rely on the Products' advertising or labeling because of the deceptions and misrepresentations on them, and so will not purchase the Products or other products offered by Defendant although they would like to.

71. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

72. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
### Violation of the Florida Unfair and Deceptive Trade Practices Act (FUDTPA)
### Chapter 501, Part II, Florida Statutes
### (Nationwide Class)

73. Plaintiffs and the Class reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

74. Section 501.204(1) of the Florida Statutes provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Florida Deceptive and Unfair Trade Practices Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in … deceptive[] or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

75. Defendant was, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Act. § 501.203, Fla. Stat.

76. Relying on the flavoring claims made on the Products, consumers including Plaintiffs purchased the Products believing they were purchasing foods containing only natural flavorings, when they were not.

77. Defendant's use of deceptive, false, and/or misleading Product labels constitutes an unfair or deceptive trade practice within the meaning of the FUDTPA.

78. Defendant's unfair or deceptive trade practice has been the proximate cause of damages sustained by Plaintiffs and the Class.

79. Such damages recoverable by Plaintiffs and the Class include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial, as well as costs of suit and attorneys' fees.

**COUNT 2**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CIVIL CODE § 1750 *et seq*.**
**(California Subclass)**

80. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

81. Plaintiffs are a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

82. The sale of Defendant's Products to Plaintiffs and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

83. The Products purchased by Plaintiffs and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

84. As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the flavoring representations that were made by Defendant on the labels of its Products.

85. Defendant's ongoing failure to provide material facts about its Products on its labels violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

   a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

   b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

   c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

   d. Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

   e. Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

86. By reason of the foregoing, Plaintiffs and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

87. Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiffs sent this notice by certified mail to Defendant, at least 30 days before the filing of this Complaint.

88. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs and the Class are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

89. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiffs are entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 3
## UNJUST ENRICHMENT
### (Nationwide Class, Pursuant to Florida Law)

90. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

91. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the flavoring in the Products.

92. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

93. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

94. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

95. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

96. Plaintiffs seek disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

97. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendant's actions as set forth above.

### COUNT 4
### BREACH OF EXPRESS WARRANTY
**(Nationwide Class, Pursuant to Florida Law)**

98. Plaintiffs reallege the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

99. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products were "Naturally Flavored."

100. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiffs and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

101. The Products do not conform to the express warranty that the Products are "Naturally Flavored," because they are flavored by and contain ingredients that are unnatural and synthetic, *i.e.*, DL malic acid.

102. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the statues cited herein and/or were unjustly enriched and/or breached express warranties;

c. Awarding actual and other damages as permitted by law or equity;

d. Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

October 16, 2023